UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

BRIAN SANDERS, )
)
Petitioner, )
)
v. ) Nos.: 1:11-cv-357; 1:09-cr-98(13)
) *Mattice/Carter*
UNITED STATES OF AMERICA, )
)
Respondent. )

## MEMORANDUM OPINION

Acting *pro se*, federal inmate Brian Sanders ["Petitioner" or "Sanders"] filed a motion to reduce sentence, pursuant to 18 U.S.C. § 3582(c)(2), followed by a motion to vacate, set aside, or correct a sentence, under 28 U.S.C. § 2255, [Docs. 642 and 646].[1]   Thereafter, Attorney Anthony Martinez filed memoranda in support of the § 3582 motion and the § 2255 motion, arguing that relief is warranted on the claims asserted in both motions under the Fair Sentencing Act of 2010, Pub. L. 11-220, 124 Stat. 2372 (2010) ["FSA"], [Docs. 677 and 697].  (The FSA increased the amounts of crack cocaine necessary to trigger mandatory minimum sentences.)

In his § 3582 motion, Sanders offers a claim under the FSA and, in his § 2255 motion, he offers claims involving ineffective assistance of counsel, sentencing disparities, and reiterates the claim constructed on the FSA.  The United States filed responses in opposition to Petitioner's *pro se* § 3582 motion, as well as to his *pro se* § 2255 motion.  [Docs. 663, 665].  After the submission of attorney-filed memoranda on

---

[1]   All citations to the record refer to Petitioner's criminal file.

Sanders' behalf, the United States filed new responses. [Doc. 698, 699]. The United States maintains that Sanders is not entitled to relief pursuant to § 3582. [Doc. 698]. Although the United States agrees in its Response to Sanders' § 2255 motion that the "Court has discretion to reconsider petitioner's sentence in light of the reduced statutory penalties set forth in the Fair Sentencing Act," it nonetheless argues that no modification of Petitioner's sentence is necessary or appropriate. [Doc. 699]. For the reasons which follow, both Sanders' § 3582(c)(2) and his § 2255 motions will **DENIED**.

## I. Background

Sanders was charged, along with eighteen co-defendants, in a sixty-five count indictment returned by the federal grand jury on May 17, 2009, [Doc. 3]. Nine of those counts (i.e., 1, 22-23, 55-56, and 58-61), alleged that Petitioner engaged in a cocaine conspiracy, distributed cocaine hydrochloride, and distributed cocaine base, [*Id.*].

On June 24, 2010, before the U.S. Magistrate Judge, Sanders entered a guilty plea, pursuant to a written plea agreement, to Count 1 of the indictment, which charged him with conspiracy to manufacture, distribute, and possess with the intent to distribute five (5) grams or more of a mixture or substance containing a detectable amount of cocaine base ("crack"), in violation of 21 USC §§ 846, 841(a)(1) and (b)(1)(B), [Docs. 522, 531]. The plea agreement contained a factual basis in support of Petitioner's guilty plea, [Doc. 521, under seal]. According to that document, several agents, including some with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), began investigating narcotics trafficking organization involving the distribution of cocaine base (crack) and cocaine hydrochloride between 2004 and

2

2009. During that time frame, according to numerous witnesses, co-defendants, and Petitioner himself, he was a knowing, intentional, and voluntary participant in a conspiracy to sell more than 5 grams of crack cocaine. On two separate occasions in 2007, in transactions which were monitored and recorded, a confidential informant made respective controlled purchases of 1.9 and 1.4 grams of cocaine hydrochloride from Petitioner. Six similar transactions were monitored and recorded in 2008—three in July and three in August. These six transactions involved crack cocaine in sequential amounts of .4 grams, .4 grams, .4 grams, 1.2 grams, .5 grams, and 2.6 grams, for a total of 5.5 grams of crack cocaine. Some of this conduct occurred in the Eastern District of Tennessee.

In the plea agreement, petitioner agreed to waive his right to file a § 2255 motion, except for claims of "claims of ineffective assistance of counsel or prosecutorial misconduct not known to the [petitioner] by the time of entry of judgment," [Doc. 521, Plea Agreement, under seal]. Thereafter, the Court accepted the plea, [Doc. 550].

A presentence investigation report ("PSR") was prepared. Using the 2009 version of the United States Sentencing Commission Guidelines Manual, the probation officer calculated a base offense level of 24 for the cocaine conspiracy involving 5 to 20 grams of cocaine, *see* USSG § 2D1.1(c)(8), reduced by three for acceptance of responsibility, *see* USSG § 3E1.1(a) and (b). The resulting adjusted offense level was 21.

However, because Petitioner's criminal history included a 1994 McMinn County, Tennessee conviction for sell and delivery of cocaine, with a resulting 3-year

sentence; a 1996 McMinn County conviction for sell of cocaine, which resulted a 4-year sentence; two 2000 McMinn County convictions for sell and delivery of cocaine, which netted him two 9-year sentences; and a 2008 Bartow County, Georgia conviction for possession of cocaine, which ensued in an 8-year sentence (suspended to probation), [PSR, ¶¶ 36, 40-42, and 45], the probation officer looked to USSG § 4B1.1, which provides the criteria for determining whether a defendant qualifies as a career offender:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG 4B1.1(a). As used in this section, the term "two prior felony convictions" means:

> (1) The defendant committed the instant offense of conviction subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense … and (2) the sentences for at least two of the aforementioned felony convictions are counted separately under the provision of § 4A1.1(a), (b), or (c).

USSG § 4B1.2(c). A "controlled substance offense" is defined, in relevant part, as "an offense under federal or state law, punishable by imprisonment for a term exceeding one year that prohibits the manufacture…of a controlled substance … or the possession of a controlled substance … with intent to manufacture, import, export,

4

distribute, or dispense."

The probation officer concluded that Sanders was a career offender, which increased his adjusted offense level to 37. *See* USSG § 4B1.1(b) (" if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply"). However, deducting three levels for acceptance of responsibility, pursuant to USSG § 3E1.1 (a) and (b), resulted in a total offense level of 34.

An assessment of eighteen criminal history points established a criminal history category of VI, which is the same category required by Petitioner's career offender classification. *See* USSG § 4B1.1(b). A criminal history category of VI and a total offense level of 34 yielded a guidelines range of 262-327 months' imprisonment.

Petitioner filed a motion for a variance from his guidelines sentence and a supporting sentencing memorandum, arguing that the application of the career offender designation resulted in a sentence far greater than necessary to achieve the purposes of sentencing and suggesting that an appropriate sentence would be a guidelines range of 120 to 137 months, [Doc. 584]. The United States responded, pointing out that the calculated guidelines range was 262-327 months and arguing that a lengthy sentence would be proper, given Petitioner's career offender designation and past criminal conduct, [Doc. 586]. In Petitioner's reply, he countered that the career offender provision contained in the sentencing guidelines is advisory and reiterated that 120 to 137 months imprisonment would achieve the purposes of sentencing, [Doc. 587].

The Court imposed a 200-month sentence, sixty-three months above the top of

the range proposed by Petitioner but sixty-two months below the bottom of the guidelines range, [Doc. 588]. The remaining counts in the indictment against Sanders were dismissed, pursuant to the government's motion, as dictated by the terms in the plea agreement, [Doc. 592, Judgment].

Sanders did not pursue a direct appeal to the Sixth Circuit, but instead filed a motion to modify or reduce his sentence under 18 U.S.C. § 3582(c)(2) and this timely § 2255 motion to vacate.

## II. 18 U.S.C. § 3582(c)(2) Motion to Reduce Sentence

Prior to filing his § 2255 motion, Sanders filed a *pro se* motion for a sentence reduction under 18 U.S.C. § 3582(c) raising the same arguments as he does in his § 2255 motion, i.e., he is entitled to be resentenced under the FSA [Doc. 642]. In his subsequent attorney-filed memorandum, Sanders argues that he is entitled to a sentencing reduction pursuant to Amendment 750 to the U.S. Sentencing Guidelines and *Dorsey v. United States,* 132 S.Ct. 2321 (2012) (holding that the FSA, with its more lenient penalties, applies to defendants sentenced on or after the act's effective date of August 3, 2010, even if the offense was committed before that date). [Doc. 677].

The government opposes the motion, arguing that § 3582(c)(2) permits a sentenced to be reduced only when a defendant's sentencing range has subsequently been lowered by the Sentencing Commission, not when Congress establishes new statutory penalties or as a result of a Supreme Court decision. Therefore, according to the government, § 3582(c)(2) provides Sanders – who was sentenced as a career offender -- with no avenue for relief under *Dorsey.* [Doc. 698]

Title 18 U.S.C. § 3582(c) prohibits the Court from modifying a term of imprisonment once it has been imposed except under very limited circumstances, none of which are applicable to Sanders' case. Section 3582(c)(2), in pertinent part, only gives the Court authority to reduce a sentence "of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)" and if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Amendment 750 to the federal sentencing guidelines, which became effective November 1, 2011 but applies retroactively, "implemented the FSA and changed the drug quantity table found in USSG § 2D1.1(c) by reducing the base offense level for most cocaine base offenses." *United States v. Tillman*, 511 F. App'x 519, 521 (6th Cir. 2013).

Given that Sanders was sentenced as a career offender under U.S.S.G. § 4B1.1, rather than based on the drug quantity table in § 2D1.1(c), Amendment 750 to the Sentencing Guidelines does not apply to Sanders' sentence. *See, e.g.*, *United States v. Wherry*, 518 F. App'x 434, 437-38 (6th Cir. 2013) (rejecting the argument that Amendment 750 applies to career offenders because the career offender levels under 4B1.1 are calculated using statutory maximum penalties that were lowered by the FSA, noting that "[t]he statutory maximum for crack cocaine offenses was lowered by the FSA, but U.S.S.G. Amendment 750 alters only § 2D1.1."). Because the retroactive Guidelines amendment itself does not alter Sanders' sentencing range, § 3582(c)(2) does not confer jurisdiction of this Court to resentence Sanders.

7

Instead, it appears that, if the Court has authority to correct Sanders's sentence in this circumstance, such authority is derived from 28 U.S.C. § 2255. *See, e.g.*, *United States v. Passmore*, 503 Fed. Appx. 340, 341 (6th Cir. 2012) (affirming district court's decision it had no authority to reduce Passmore's sentence under § 3582(c)(2) based on the changed mandatory minimum sentence and noting its "decision is not intended to limit Passmore's ability to challenge her sentence under 28 U.S.C. § 2255."); *United States v. Floore,* 2012 WL 3765132 (S.D. Ill. Aug. 30, 2012) ("The proper vehicle to grant defendant such relief [under *Dorsey*] is a petition pursuant to 28 U.S.C. § 2255 . . . ."). As previously noted, Sanders has submitted a § 2255 motion requesting the Court to vacate his sentence and resentence him based on the FSA and the Supreme Court's opinion in *Dorsey*. Therefore, the Court will **DENY** Sanders' motion to modify sentence pursuant to § 3582(c), but it will address the merits of Sanders' request for FSA relief in its analysis of his § 2255 motion to vacate.

### III. 28 U.S.C. § 2255 Motion to Vacate

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack." As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th

8

Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). To warrant relief for a non-constitutional error, a movant is required to show a fundamental defect in the criminal proceedings which inherently results in a complete miscarriage of justice or an egregious error that rises to the level of a violation of constitutional due process. *See, e.g.*, *Davis v. United States*, 417 U.S. 333, 346 (1974); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir.1994).

Petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, a court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If relief under § 2255 is warranted with respect to an FSA claim, a sentence may be modified without an evidentiary hearing or a formal resentencing hearing. *See Wright v. United States*, Nos. 3:10–CR–63–TAV–CCS, 3:13–CV–53–TAV–CCS, 2015 WL 728684, at * 5 (E.D. Tenn. Feb. 19, 2015) (finding no need either for an evidentiary hearing or new sentencing hearing) (citing *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2006), as "stating that § 2255 motion, affords a district court the authority to correct an unlawful sentence without the necessity of a formal sentencing hearing").

In his § 2255 motion, Petitioner offers four claims: two claims of ineffective assistance of counsel, a sentencing disparity claim, and an FSA claim. In its

response, the United States argues, that, in the plea agreement, Petitioner waived his right to litigate, on collateral review, ineffective assistance claims, save those unknown to him by the time the judgment entered and that none of the claims of ineffective assistance here asserted fall within the exception. Respondent argues, in the alternative, that three of Petitioner's' claims, including the ineffective assistance claims, provide no basis upon which relief may be granted, that the FSA claim has arguable merit, but that it, nonetheless, does not warrant a different sentence since the 200-month term lies in the middle of the new guidelines range calculated under the FSA. Those arguments are well-taken, and the Court will **DENY** relief on all claims.

*A. Ineffective Assistance of Counsel*

Claims of ineffective assistance arise from the guarantee in the Sixth Amendment, which provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

10

*Id.* As with any other claim under § 2255, a movant bears the burden of proving by a preponderance of the evidence that his counsel was deficient. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A petitioner asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

When considering *Strickland*'s second prong, in the context of a guilty plea, a petitioner must show a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Moss*, 323 F.3d at 454-55 (quoting *Strickland*, 466 U.S. at 694). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995) ("[A] defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S.

1058 (1996).

The standard by which a court reviews counsel's performance is highly deferential, *Strickland*, 466 U.S. at 689, and counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). While both prongs must be established in order to meet a petitioner's burden, if "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S.at 697. A petitioner alleging ineffective assistance of counsel bears a heavy burden of proof. *Pough*, 442 F.3d at 966.

In his § 2255 motion, Sanders contends that counsel failed to present proof of his psychological problems as potential mitigating evidence at sentencing and that counsel failed to give accurate advice concerning the cooperation provision in the plea agreement, with the result that Petitioner received nothing in exchange for the information he revealed to the government.

1. *The Psychological Evidence*

In his first ineffective-assistance claim, Sanders maintains that the results of a psychological evaluation performed by Leslie D. Jones, Ph.D., showed that he displayed prominent feelings of paranoia and persecution; suffered from severe depression and anxiety; had been exposed over the years to traumatic events; was functioning cognitively in the low average to average range; had a learning disorder in reading and spelling; and would benefit from treatment for his depression, anxiety, paranoia, and substance abuse and from tutoring or adult education classes. Dr.

12

Jones's diagnoses of Petitioner included psychoactive substance and alcohol dependence; post-traumatic stress disorder; major, recurrent, and severe depressive episodes, with psychotic features; a personality disorder, not otherwise specified, with paranoid and schizotypal features; a learning disorder; and deficiencies in expressing himself in writing. Sanders now contends that counsel failed to present this evidence to the Court.

As Respondent correctly argues, the record shows otherwise. In the sentencing memorandum counsel filed, counsel pointed out several traumatic events to which Petitioner had been subjected, including a childhood of physical abuse, the death of a close friend, and the murders of Petitioner's sister and brother. Counsel also emphasized Sanders's history of alcohol and drug abuse, resulting from his client's attempt to self-medicate and cope with those losses, as well as Sanders' unmet need for mental health counseling, educational assistance, drug treatment, and other assistance needed to deal with those adult and childhood traumas.

As *Strickland* instructs, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S at 690. In this instance, Petitioner's attorney investigated his client's mental makeup and pursued a reasonable strategy at sentencing by pointing to aspects of his background and need for counseling (which were included in the psychological evaluation) to justify a more lenient sentence for his client. This was a tactical decision on the attorney's part. The fact that counsel did not argue every single facet of the psychological evaluation makes that decision no less strategic. Emphasizing stronger arguments over weaker ones is the hallmark of effective advocacy. *See*

13

*e.g., Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (observing that "a lawyer who throws in every arguable point—'just in case'—is likely to serve h[is] client less effectively than one who concentrates solely on the strong arguments").

Furthermore, Petitioner does not claim that, but for counsel's failure to present additional mental health and background evidence, there is a reasonable probability that he would have received a lesser sentence. Nor can the Court so conclude after reviewing the record. Having failed to show either a deficient performance or prejudice, Petitioner cannot prevail on this claim of ineffective assistance.

2. *The Plea Agreement*

Though the arguments supporting this claim are somewhat difficult to discern, Petitioner first points to the provision in the plea agreement which required him to cooperate with the government, and which, in turn, dictated that he tell the truth, admit to the facts, and, allegedly, give up any further fight. Sanders maintains that he understood that he would be rewarded for giving the government full information and that, even though he kept his part of the bargain, he received nothing in return. Sanders further alleges that his attorney brought for Petitioner's review "the paper" explaining the terms of the plea agreement. Petitioner contends that he remembers that the plea he accepted was for ten years' imprisonment, to be followed by eight years of supervised release. Later, according to Sanders, counsel informed him that the Assistant U.S. Attorney was not authorized to "make a deal like that."

Petitioner's allegations are undercut by the record.

An integral part of Petitioner's plea agreement is the provision which required him to cooperate with the government, by meeting with and being interviewed by law

enforcement authorities and other authorities and disclosing information concerning those who were involved in the offense or in other criminal activity, [Plea Agreement,¶ 7, under seal]. Petitioner has not identified what he expected to receive in exchange for his cooperation, but, in the plea agreement, the only specific consideration for Petitioner's cooperation was that the government would not use, with certain exceptions, "any self-incriminating information provided by the defendant pursuant to this written plea agreement," [*Id.*, ¶8]. Petitioner does not indicate that the government used any self-incriminating information against him which he revealed during interviews with law enforcement agents or other authorities.

Also, as a consideration for Petitioner's guilty plea, the United States agreed to dismiss the remaining counts against Petitioner at sentencing. The judgment shows that the government moved to dismiss those counts, that the motion was granted, and that the remaining counts against Petitioner were dismissed, [Doc. 592].

Petitioner received all that the government agreed he would receive as a result of his cooperation with law enforcement. In addition, Sanders does not contend that, but for counsel's failure to obtain additional consideration in exchange for his cooperation, he would not have pled guilty, but would have stood trial. Thus, he has not alleged, much less shown, that he sustained any prejudice from counsel's purported error, and this omission also is sufficient to justify a dismissal of this sub-claim of ineffective assistance. *Strickland*, 466 U.S. at 697.

In addition, Sanders maintains that, as he remembers it, he agreed to plead guilty to a sentence of ten years, with eight years of supervised release. The record does not align with Petitioner's memory.

The written plea agreement, which Petitioner signed, explained that because Petitioner had at least one prior felony drug conviction, the punishment for his offense was "a mandatory minimum term of ten (10) years up to life," [Doc. 521, Plea Agreement, ¶ 1(c)(under seal)]. That agreement also stated:

> The Court may impose any lawful term(s) of imprisonment . . . up to the statutory maximum(s); [and]
>
> ...
>
> No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding the potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the pre-sentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

[*Id.* at ¶¶ 3(a) and 11].

In addition to the clear and unequivocal language in the signed plea agreement, U.S. Magistrate Judge William B. Carter, who presided over Petitioner's change of plea hearing, engaged in a colloquy with Petitioner concerning his plea agreement and guilty plea and found that he understood the nature of the charge and the penalties provided by law, [Doc. 531, R & R at 1]. And armed with that understanding, Sanders persisted in his desire to plead guilty to the lesser included offense in Count One.

16

The Supreme Court has held:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

So it is here too. Petitioner's bald, conclusory allegation that he remembers that he was extended an offer of ten years' imprisonment in the plea agreement cannot overcome the written record to the contrary. Petitioner's flawed memory is insufficient to show that counsel rendered a deficient performance. And just as in the prior claim, Sanders does not allege that, but for counsel's supposed error, he would not have pled guilty and would have insisted on standing trial. Thus, there is no showing of prejudice either.

B. *Sentencing Disparities*

In his next claim, Sanders maintains that he and his co-defendants who were convicted of crack cocaine offenses were punished more severely than those who were convicted of non-crack cocaine offenses and that some received lesser prison sentences for "more drugs" than the sentence he received for a lower amount of drugs.

As Respondent correctly points out, this claim, which alleges disparities between his sentence and those of his co-defendants, could have been raised on direct appeal, but was not, which constitutes a procedural default. The procedural

17

default doctrine holds that a claim not presented on appeal when it could have been presented may not be reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to excuse a failure to raise the claim previously. *Bousley v. United States*, 523 U.S. 614, 619 (1998); *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Sanders has not attempted to make either showing and, thus, collateral review is now barred by the procedural default.

Even if the claim was not procedurally defaulted, it is conclusory to a certain extent. Petitioner does not identify his co-defendants whose sentences he now asserts were baselessly disparate to his sentence. "[D]isparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *United States v. Vassar*, 346 F. App'x 17, 28, 2009 WL 2949290, * 11(6th Cir. Sept. 6, 2009 (citing *United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008)). Because Sanders has not specified which of his co-defendants received the sentences of which he now complains, the Court is unable to determine what differences existed between him and those co-defendants.

Furthermore, even if the claim was not conclusory and was sufficiently pled, "the kind of "disparity" which causes concern "is an unjustified difference across judges (or districts) rather than among defendants to a single case." *See United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). And too, a defendant who complains of sentence disparities but who has received a below-guidelines sentence, "stands on especially shaky ground" since the purpose of the guidelines is "to ensure that similarly-situated defendants are punished similarly." *Vassar*, 346 F. App'x at 29,

2009 WL 2959290, *at 11. Petitioner profited by not being treated comparably to other similarly-situated defendants who did not receive sentences beneath their guideline ranges, as he did.

The Court finds that this claim has been procedurally defaulted and, in the alternative, is conclusory and lacks merit.

C. *FSA Claim*

Sanders next asserts that Attorney General Eric Holder issued a memorandum to federal prosecutors, instructing them to apply the FSA to all sentences occurring on or after August 3, 2010.[2]  Counsel subsequently filed a memorandum in support of Sanders' § 2255 FSA claim, arguing that Petitioner's entire sentencing proceeding is invalid because his sentence was imposed in violation of the Fair Sentencing Act. Petitioner's position is that the FSA's new mandatory minimum sentencing provisions apply to all sentences imposed on or after August 3, 2010; since Sanders was sentenced on December 6, 2010, the penalties called for in the FSA should have been applied to him.  Counsel alternatively argues that Sanders' sentence constitutes a miscarriage of justice because the lower penalties of the FSA were not applied at his sentencing.

As previously discussed, the FSA, enacted on August 3, 2010, amended 21 U.S.C. § 841 to require larger quantities of crack cocaine to trigger mandatory minimum sentences.  Even where the offense conduct occurred prior to that date, federal defendants who were sentenced on or after that date should receive the benefit of the FSA's lowered minimum mandatory punishment.  *Dorsey v. United*

---

[2] *See e.g., United States v. Remble*, 520 F. App'x 436, 441, 2013 WL 1662953, * (6th Cir. Apr. 15, 2013) (referring to a memorandum issued on July 11, 2011 by Att'y Gen. Eric H. Holder, Jr.).

19

*States*, 132 S. Ct. 2321, 2335 (2012) (finding that the FSA's "new, lower mandatory minimums apply to the post-Act sentencing of pre-Act offenders").

Though Petitioner committed his crack cocaine offense prior to the enactment of the FSA, he was sentenced after August 3, 2010. The United States concedes that the FSA applies to Petitioner, and both parties agree that a recalculation of his guidelines sentence under the FSA results in a base offense level of 34, yielding a total offense level of 31, and a guideline range of 188 to 235 months' imprisonment, which is lower than the range of 262 to 327 months deemed applicable to Petitioner at his initial sentencing hearing.  The United States recognizes that the Court has the discretion to reconsider Petitioner's sentence under FSA's lowered statutory penalties but, nonetheless, argues that the change in Petitioner's guideline range does not warrant § 2255 relief because the Court based its initial sentencing determination upon the § 3553(a) sentencing factors, which reflected a substantial variance.[3] Alternatively, the Government argues that the Court could modify Sanders' sentence "without conducting a formal resentencing" and that the Court should re-impose his original 200-month sentence.

The Court is persuaded by Respondent's arguments and by its own application of the § 3553(a) factors and consideration of the appropriate penalty for Petitioner's offense at his original sentencing hearing.  As noted, the 200-month term of

---

[3]  Counsel for Petitioner incorrectly states that the Court imposed a downward departure of 62 months. The Court notes that counsel has conflated the standards of § 3553(a) and § 3553(b) in so noting.  In this case, the Court did not determine that atypical factors supported a reduction in the offense level attributed to Defendant based on his Guideline calculations.  *See* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0.  Instead, the Court found, after assessing the sentencing factors listed in § 3553(a), that a sentence of 200 months was sufficient, but not greater than necessary, to achieve the goals of sentencing in Petitioner's case. Had the Court imposed a downward departure, rather than a downward variance, its analysis of Sanders' FSA claim could lead to a different conclusion.

imprisonment that the Court selected as the appropriate sentence was 62 months below the bottom of the original guideline range. The Court made a decision to substantially vary below that guideline range in order to impose a sentence that was sufficient, but not greater than necessary, to achieve the purposes of sentencing. Although that sentencing range was calculated under the harsher pre-FSA sentencing regime, the sentence imposed falls within the lower end of Petitioner's post-FSA sentencing range.

Even in view of the FSA and Sanders' adjusted guideline range, the Court nonetheless finds that the 200-month sentence previously imposed remains the appropriate sentence. Stated another way, in Sanders' case, the fact that the reduced statutory penalties of the FSA were not applied at Sanders' sentencing did not constitute a fundamental defect as so as to render his sentence a manifest injustice. *See United States v. King*, Nos. 1:10-cr-10004; 1:12-cv-1086, 2014 WL 1386420, at *2 (W.D. Ark. Apr. 9, 2014) (denying § 2255 FSA claim based, in part, on a finding that the sentence which was "far below the pre-FSA guidelines range" and "on the lower of the post-FSA guidelines range" was not "manifestly injust" so as to warrant the requested relief); *Hawkins v. United States*, Nos. 1:12CV–00165–JHM; 1:06CR–00064–JHM, 2013 WL 4648314, at *4 (W.D.Ky. Aug. 29, 2013) (finding, with respect to a § 2255 motion, that the previously imposed 720-month sentence was the appropriate sentence "[f]or reasons set forth in the original sentencing hearing" and because the factors which drove the initial sentencing determination were unchanged). Accordingly, the Court will **DENY** Sanders' request that the Court vacate or modify his sentence pursuant to § 2255.

## IV. Conclusion

For the reasons set forth herein, Petitioner's motion to reduce his sentence under 18 U.S.C. § 3582 and his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, [Docs. 642 and 646], will be **DENIED,** and this case will be **DISMISSED**.

## V. Certificate of Appealability

The Court now must consider whether to issue a certificate of appealability (COA) should Sanders file a notice of appeal, since he may not appeal a final order in a § 2255 case to the Sixth Circuit unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. §2253(c)(1). Issuance of a COA depends on whether a petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has individually assessed Petitioner's claims under the relevant standards and finds that those claims do not deserve to proceed further because they have no viability in light of the governing law. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because the resolution of Petitioner's claims would not be debatable among jurists of reason, he has not made the requisite showing for issuance of a COA. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). Therefore, a COA will not issue with respect to Sanders' § 2255 motion.[4]

---

[4] Petitioner need not obtain a COA to appeal the denial of his motion to reduce sentence brought pursuant to 18 U.S.C. § 3582(c)(2). *See United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010) (noting that "motions under § 3582(c)(2) are not collateral attacks on the original sentence, and thus an appeal of their denial does not require a certificate of appealability").

22

A separate judgment order will enter.

**ENTER:**

_____/s/ Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE